Filed 12/9/24  P. v. Martinez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAVIER ALFONSO MARTINEZ,<br><br>    Defendant and Appellant. | H050960<br>(Santa Clara County<br> Super. Ct. No. C2206640) |

A jury convicted Javier Alfonso Martinez of felony cruelty to animals and misdemeanor possession of controlled substance paraphernalia.  The district attorney based the charges on an incident in which Martinez threw his dog to the ground and hit it twice.  Martinez argues the trial court erred in failing to give a unanimity instruction because throwing the dog and hitting it were two separate acts.  He further contends the district attorney committed prejudicial prosecutorial misconduct by misstating the law and encouraging the jurors to find Martinez guilty even if they could not agree as to which criminal act occurred.

We conclude the trial court committed no error and the district attorney committed no misconduct because the record demonstrates the animal cruelty charge was based on one discrete criminal event that did not require a unanimity instruction.  Accordingly, we affirm the judgment.  However, we agree with the parties that the imposed sentence of 364 days for the misdemeanor count for possession of controlled substance paraphernalia

exceeded that authorized by statute, and we reduce the sentence on that count to 180 days.

## I.    BACKGROUND

### A.    *The Charges*

In 2022 the Santa Clara County District Attorney charged Martinez with one count of felony cruelty to animals, along with prior conviction, prior prison term, probation, and unsatisfactory probation allegations (Pen. Code § 597, subd. (b)[1]; § 1170, subd. (b) [count 1]); and one misdemeanor count of possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a) [count 2].)

### B.    *The Trial*

At trial, the prosecution presented evidence that two plainclothes police officers, Mark Koska and Ryan Kim, conducted surveillance in the vicinity of St. James Park in San Jose on May 27, 2022, when they observed Martinez pick up a dog and throw it to the ground. Koska testified that Martinez picked up the dog "by the neck area" to "about shoulder/head level" and then quickly threw it. The dog landed on its back and then Martinez punched it twice in the abdomen area. Kim also testified that he "observed [Martinez] grab his dog, bring it to the sidewalk, throw it onto the ground, and punch it approximately two times in the abdomen area for the dog."

Koska and Kim broke their cover and Kim searched Martinez, discovering two types of methamphetamine pipes on Martinez. Koska then contacted animal control and an officer arrived to take custody of the dog.

Martinez testified at trial that he adopted the dog, Chula, from the Humane Society and that she was a little under two years old at the time of the incident. Martinez admitted at trial that he had smoked methamphetamine on the night of May 27, 2022, but he testified that at the time of the incident he "wasn't under that high." Martinez testified

---

[1] Subsequent undesignated references are to the Penal Code.

that his dog had run into the street, so he "ran after her, and [he] grabbed her by her harness with one hand and brought her back to [him] and sat her down. And [he] spanked her on her butt and told her no."

As part of the prosecution case, the district attorney presented as a witness a veterinarian who had examined Chula following the incident. The veterinarian testified that he found "no abnormalities," meaning he found no evidence of injury to the dog.

As part of the discussion of jury instructions at trial, the parties and the court addressed the issue of whether a unanimity instruction was required. The district attorney argued that a unanimity instruction is not required when there is a single course of conduct, and that throwing the dog on the ground and punching it was a single course of conduct of abuse. During the course of the trial, the court informed the parties by e-mail of her inclination to give a unanimity instruction because of the risk that the jury could divide on two discrete crimes and not agree on any particular crime. Discussions regarding the unanimity instruction continued throughout the trial and, following the filing by the district attorney of a supplemental motion in limine to preclude a unanimity instruction, and additional discussion with the parties, the trial court decided not to give the unanimity instruction.

Ultimately, the jury convicted Martinez on both counts. The trial court found true the four allegations under section 1170, subdivision (b). The court denied probation and sentenced Martinez to a determinate term of two years imprisonment to be served in the county jail under section 1170, subdivision (h) for the felony cruelty to animals count and a concurrent 364 days for the misdemeanor possession of paraphernalia count.

Martinez timely appealed.

## II.    DISCUSSION

### A.    *Unanimity Instruction*

Martinez argues that the trial court erred by failing to give a unanimity instruction informing the jurors that they had to agree which act formed the basis of the animal

3

cruelty count in light of the district attorney's failure to elect the theory of the offense. Martinez further argues that the district attorney committed prejudicial prosecutorial misconduct by misstating the law and encouraging the jurors to find Martinez guilty even if they could not unanimously agree on the criminal act that occurred. We review the claim of instructional error as to the felony count de novo (*Garrabrants v. Erhart* (2023) 98 Cal.App.5th 486, 496), and conclude no unanimity instruction was required under the facts of this case.

As a general matter, "[i]n cases 'where violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged' the prosecutor is required to elect which act he was relying on to prove the crime charged or the jury must be given a unanimity instruction. [Citation.] By contrast, when the issue presented to the jury is whether a defendant committed a course of conduct and not whether he committed a specific act on a specific day, the prosecutor does not have to elect a specific act and the jury need not unanimously agree on a specific act. [Citation.]" (*People v. Higgins* (1992) 9 Cal.App.4th 294, 301.) The continuous course of conduct exception arises in two contexts. "The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time. [Citation.]" (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224.)

As succinctly explained by the California Supreme Court: "The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed her guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may

4

form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo* (2001) 25 Cal.4th 1124, 1134-1135 (*Russo*); see also *People v. Covarrubias* (2016) 1 Cal.5th 838, 877-878 (*Covarrubias*).)

Martinez attempts to distinguish between the acts in this case—(1) throwing his dog to the ground and (2) hitting her—in arguing that the charged crime of animal abuse was based on "discrete individual acts," so the continuous course of conduct exception does not apply. Martinez here conflates "acts" with "crimes." "Where the evidence suggests that the defendant might have committed more than one crime, the court must instruct the jury that it must agree on *which* of the acts—and, hence, which of the *crimes*—the defendant committed. [Citations.]" (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 73 (*Quiroz*).) "Where, however, the evidence suggests that a defendant committed only one discrete criminal event—but may have done so in one of several different ways—no unanimity instruction is required. [Citations.] Unanimity is not required in this situation even if the jurors might conclude that the defendant is guilty based on different facts, or on different findings about the acts the defendant committed or his mental state." (*Ibid*.)

Martinez cites *People v. Sanchez* (2001) 94 Cal.App.4th 622 (*Sanchez*) for the proposition that the acts in this case should be considered separate such that a unanimity instruction was required. Addressing as a matter of first impression the question of whether animal abuse is a continuing offense, the *Sanchez* court noted that "animal cruelty may be committed by a continuous course of conduct, [and] it may also be

5

committed by a single act of abuse such as by kicking or beating an animal."[2] (*Id.* at pp. 632-634.)

The *Sanchez* court concluded that counts involving a failure to provide adequate food and water for animals on an ongoing basis, and a failure to provide adequate medical care, did not require a unanimity instruction. (*Sanchez*, *supra*, 94 Cal.App.4th at p. 634.) In contrast, the court concluded that a unanimity instruction was required where "[t]he prosecution introduced evidence of two separate incidents in which defendant kicked a dog during the period of time charged in the information. One incident occurred when defendant kicked a dog with a steel-toed boot during a barbecue on his property. A second incident occurred when he kicked a dog that was in his way . . . . (*Ibid.*) The court stated the "count must be reversed because the evidence establishes two discrete criminal events of cruelty to dogs, each sufficient to support a conviction under section 597, subdivision (b), and separately punishable under section 654 and each subject to a different possible defense." (*Ibid.*)

*Sanchez* does not compel reversal here for failure to give a unanimity instruction. Although in *Sanchez* the incidents of physical abuse—kicking the dogs—required a unanimity instruction, those incidents were indeed discrete criminal events, separated by both time and location. In contrast, the acts of abuse here, throwing and then punching the dog, occurred within a short, uninterrupted temporal span near the park.

"[T]he continuous-course-of-conduct exception applies when (1) 'the acts are so closely connected in time as to form part of one transaction,' (2) 'the defendant tenders the same defense or defenses to each act,' and (3) 'there is no reasonable basis for the jury to distinguish between them. [Citations.]' [Citation.]" (*People v. Lueth* (2012) 206

---

[2] *Sanchez* examined this issue in the context of Penal Code section 597, subdivision (b), but there is no material distinction between that subdivision and subdivision (a) that would warrant a different conclusion.

Cal.App.4th 189, 196.)  The first element is satisfied as Martinez's acts all took place in rapid succession.

With regard to the second element, Martinez argues that he tendered different defenses to his acts by denying that he threw his dog to the ground, but admitting that he struck her.  Overall, however, Martinez argued that the officers were simply incorrect in what they saw Martinez do.  For example, Martinez's counsel argued in closing that the officers who testified against Martinez were "trained observers," so, "[h]ow could they get it wrong?"  Martinez testified that he did not pick up his dog by the scruff of the neck or put his hands around the dog's neck and, although he admitted to spanking her, he denied punching her with a closed fist.

Martinez's defense amounted to a denial that the officers witnessed him abuse his dog, either because they were mistaken or untruthful.  (See *Covarrubias*, *supra*, 1 Cal.5th at p. 880 ["Granted, defendant's alleged taking of the handguns from a box in the kitchen does appear to differ in nature from the other three takings described above, because defendant was allegedly himself the perpetrator.  Nonetheless, this difference does not translate to a meaningful difference in the defenses such that the jury could have found defendant guilty of personally taking the handguns, but not guilty of aiding and abetting the takings by [his nephew].  Defendant's defense to *all* of the takings was to accuse [his nephew] of testifying untruthfully."].)  Martinez also focused on his argument that his dog suffered no injuries, arguing in closing, "Where's the abuse?  Where's the abuse?"  The defense that Martinez should not be found liable because there was no injury to the dog applies equally to all asserted acts of abuse by Martinez.

Given the short time frame, and the evidence both from Martinez and from the law enforcement officers that whatever Martinez did to and with his dog occurred without any interruption, there was no reasonable basis for the jury to distinguish between the acts of abuse.  There was therefore no reasonable danger that the jury would fail to agree

7

whether Martinez was guilty or not guilty as to the particular crime of animal abuse based on this "one discrete criminal event." (*Quiroz*, *supra*, 215 Cal.App.4th at p. 73.)

We conclude that Martinez's "criminal acts [were] so closely connected as to form a single transaction" and therefore no unanimity instruction was required. (See *Sanchez*, *supra*, 94 Cal.App.4th at p. 631.)

**B.      *District Attorney's Statements in Closing Argument***

Martinez contends the district attorney committed prejudicial misconduct by misstating the law and encouraging the jurors to find him guilty even if they could not unanimously agree on the criminal act that occurred. He points to statements by the prosecutor in which the prosecutor stated that the jurors could consider any of Martinez's acts: "Some of you can say, 'I feel like throwing her down was cruel, and that's what I'm basing my vote of guilty on.' Some of you can say, 'It was the first punch.' Some of you can say, 'It was the second punch.' Some of you can say, 'I need all three, but I found all three.' [¶] It doesn't matter how you get there. And it also doesn't matter which alternative you choose. You just need to find that he violated this law by meeting one of the elements."

The district attorney did not misstate the law. Although jurors must "all agree the defendant is responsible for the same discrete criminal event," "the theory each individual juror uses to conclude the defendant is criminally responsible need not be the same and, indeed, may be contradictory." (*People v. Davis* (1992) 8 Cal.App.4th 28, 45; see also *People v. Perez* (1993) 21 Cal.App.4th 214, 222-223 [jurors need not agree on the theory of criminality; requiring agreement as to the specific act would reward defendants "who present evidence they committed more than one act, confuse the jury and then exploit that confusion when the jurors cannot agree"].) As the California Supreme Court has explained, no unanimity instruction is required when "the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime." (*Russo*, *supra*, 25 Cal.4th at p. 1135.)

8

Further, as we have discussed, there was no reasonable basis for the jurors to distinguish between the different acts, rather than deciding in toto whether Martinez's version of events or the officers' was correct, so any possible error by the district attorney by making a distinction between the acts in closing argument was harmless. (See *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 ["Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless."].)

## C.     *Correction of Misdemeanor Sentence*

Penal Code section 19 provides that "[e]xcept in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months . . . ." (§ 19.) The trial court imposed a confinement term of 364 days on count two, misdemeanor possession of drug paraphernalia. Martinez correctly asserts that this sentence is not authorized by section 19, and he requests that the court reduce the sentence to six months. The Attorney General concedes this point, agreeing that Martinez's sentence should be reduced. We agree with both parties, and reduce the misdemeanor sentence to a jail term of 180 days.

## III.     DISPOSITION

The Clerk of the Santa Clara County Superior Court is directed to correct the record of conviction and abstract of judgment to reflect a sentence of 180 days for count two, possession of drug paraphernalia, to run concurrent with count one. The judgment is otherwise affirmed.

9

_____

                        Greenwood, P. J.

WE CONCUR:

_____

    Bamattre-Manoukian, J.

_____

    Grover, J.

People v. Martinez
H050960